UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAQUON RASHAWN JOHNSON,

Plaintiff,

v. Case No. 3:24-cv-439-BJD-SJH

S. TOLLICK, et al.,

Defendants.

# ORDER

## I. Status

Plaintiff, Shaquon RaShawn Johnson, an inmate of the Florida Department of Corrections (FDC), is proceeding *pro se* on an Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 11; Am. Compl.), with an attachment in which he sets forth his factual allegations, claims for relief, and relief sought (Doc. 11-1; Attach.). Plaintiff names five Defendants for the alleged deprivation of property and interference with his religious practice. *See* Attach. at 1, 3.

Plaintiff alleges that Defendant Wynn, the Senior Chaplain at Florida State Prison (FSP) approved his request to possess a religious talisman to "aid in his spiritual growth on the path of Buddhism." *Id.* at 4, 6. He ordered the talisman through a private company, but when it arrived, Defendant Tollick

confiscated it as "contraband" because it was connected to a string rather than a "jewelry type chain." *Id.* at 4–5. Plaintiff submitted grievances to Defendants Wynn, McClellan (Assistant Warden of Programs), Defendant Bowden (the FDC Secretary's representative), and Defendant Bass (the FDC Secretary's representative), and all were denied. *Id.* at 5–6.

Plaintiff asserts all Defendants violated his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by depriving him of his personal property, denying him a religious accommodation, interfering with his religious practice, and by discriminating against him. *Id.* at 5–7. As relief, he seeks damages (nominal, compensatory, and punitive) and an injunction (1) directing Defendants (all but Wynn) to explain how a talisman connected to a string poses a security threat and (2) directing Defendant Tollick to ensure that each inmate is provided a "confiscation slip for any of their religious property that is confiscated." *Id.* at 9.

Before the Court is Defendants' Amended Motion to Dismiss (Doc. 28; Def. Mot.) and Plaintiff's Response in opposition (Doc. 31; Pl. Resp.). Also before the Court is Plaintiff's Motion for Sanctions (Doc. 32; Pl. Mot.) to which Defendants have not responded. The Court will quickly dispose of the Motion for Sanctions. In that Motion, Plaintiff argues Defendants' attorney should be

sanctioned because, in the Amended Motion to Dismiss, counsel "false[ly]" stated that Plaintiff filed only informal grievances about Defendant Wynn, when in fact he also filed a formal grievance and an appeal. *See* Pl. Mot. at 1–2. Plaintiff's Motion is not supported by a memorandum of law showing that he is entitled to the relief he seeks. *See* M.D. Fla. R. 3.01(b). Regardless, Defendants have provided numerous grievance records and grievance logs with their Amended Motion to Dismiss, and those records speak for themselves. Even if Plaintiff believes counsel's statement in the Motion can be interpreted as conflicting with the supporting records, there is no evidence of an intention to mislead the Court. As such, Plaintiff's Motion for Sanctions will be denied.

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that

discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. Arguments & Analysis

Defendants move to dismiss Plaintiff's claims or requests for relief on the following grounds: Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) with respect to the claims against Defendants Wynn, McClellan, Bowden, and Bass (Supervisory Defendants); Plaintiff is not entitled to prospective injunctive relief because he is no longer housed at FSP; and Plaintiff fails to state a plausible RLUIPA claim. *See* Def. Mot. at 1, 13, 17. They also invoke qualified immunity. *Id.* at 1, 18. In support of their Motion, Defendants provide grievance records, grievance logs, and associated declarations (by a grievance-reviewer and a custodian of records) (Docs. 28-1, 28-2; Def. Exs. 1, 2.). Plaintiff provides his own grievance records with his Response (Doc. 31-1; Pl. Ex.).

### A. Exhaustion

Defendants concede Plaintiff exhausted his administrative remedies as to any claims against Defendant Tollick, *see id.* at 13, who is the Defendant Plaintiff alleges confiscated his talisman, *see* Attach. at 5. But Defendants maintain that Plaintiff did not exhaust his administrative remedies as to his claims against the Supervisory Defendants. *See* Def. Mot. at 13–14.

Defendants' argument is misplaced. Plaintiff's purported claims against the Supervisory Defendants are based solely on their handling of and responses to his grievances complaining about the alleged underlying violation (the confiscation of his talisman). Such claims are not cognizable under § 1983. As such, engaging in an exhaustion analysis is unnecessary.

**B. Claims Against Supervisory Defendants for Handling or Responding to Grievances**

As mentioned, Plaintiff's claims against the Supervisory Defendants relate solely to their handling of and responses to his grievances. The law is well established that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." "Either way, though, to prove that a policy

> or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates.

*Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022) (internal citations omitted).

The requisite causal connection is not established merely by filing a grievance with a supervisory official. *See Jones v. Eckloff*, No. 2:12-cv-375-Ftm-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied."); *see also Newbold v. Santana*, No. 4:19CV26-WS/CAS, 2020 WL 853910, at *7 (N.D. Fla. Jan. 8, 2020), *report and recommendation adopted*, 2020 WL 838295 (N.D. Fla. Feb. 19, 2020) ("Merely signing or denying a grievance does not create liability where the signer had no personal involvement in the alleged violations.").

Here, Plaintiff does not allege the Supervisory Defendants personally participated in confiscating his religious talisman, nor does he allege that any of them prohibited him from possessing an approved religious item. *See* Attach. at 5–6. On the contrary, he concedes that Defendant Wynn, in his role as

Chaplain, approved his request to possess a religious talisman. *Id.* at 5. Plaintiff's sole complaint against Defendant Wynn is that Wynn "failed to accommodate his religious needs by denying his [grievances]" in which he requested the confiscation of his talisman be "investigate[d]" because he did not believe that his talisman (on a string) posed a security threat. *Id.*; *see also* Pl. Ex. at 27–28. Plaintiff makes the same allegations against Defendants McClellan, Bowden, and Bass: they "failed to accommodate his religious needs by denying his grievance without ever addressing the fact that the Warden [to whom Plaintiff initially submitted a grievance] never reviewed his religious talisman and deemed it a security threat." *See* Attach. at 5–6.

According to grievance records, Plaintiff was not authorized to wear or carry the talisman he ordered because it did not comply with the relevant provision of the Florida Administrative Code (FAC). *See* Pl. Ex. at 7; *see also* Def. Ex. 1 at 27–28, 32, 41.[1] That provision provides, "[a] religious symbol or

---

[1] Generally, when ruling on a motion to dismiss under Rule 12(b)(6), a court should not consider extrinsic evidence. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, a court may consider extrinsic evidence when ruling on a 12(b)(6) motion if a document incorporated by reference in the complaint "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). *See also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."). Given the

medallion, such as a . . . talisman . . . . shall not be more than 2 inches in length or diameter, and symbols worn about the neck shall be worn under the shirt on a jewelry-type chain." *See* Fla. Admin. Code r. 33-601.201(16)(c)1.i.

Plaintiff does not dispute that the talisman he ordered was not on a jewelry-type chain. Rather, he merely disagrees with Defendants' application of the FAC provision in his circumstance, contending they failed to "investigate" whether his specific talisman posed a security threat despite that it was not on a jewelry-type chain. *See* Attach. at 5–9; *see also* Pl. Resp. at 6–7.

To the extent Plaintiff believes that a prison supervisor's failure to investigate an issue brought to light by an inmate's grievance amounts to a constitutional violation, *see* Pl. Resp. at 6–7, he is incorrect. Inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure," *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014); *see also Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 F. App'x 890, 895 (11th Cir. 2015) (finding the district court did not err in dismissing the plaintiff's claim that the defendants "had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges

---

grievance records are incorporated by reference in the Amended Complaint, are central to Plaintiff's claims, and are undisputed, the Court will consider them in making its ruling.

[b]ecause the prison grievance procedure does not create a protected liberty interest"); *Mathews v. Moss*, 506 F. App'x 981, 984 (11th Cir. 2013) (finding the plaintiff failed to state a claim because he merely "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures").

To the extent Plaintiff complains that the Supervisory Defendants misapplied or violated the relevant provision of the FAC, such conduct is not a constitutional violation through which Plaintiff may seek redress under § 1983. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under [§] 1983."). Finally, to the extent Plaintiff's allegations can be liberally construed to suggest the provision of the FAC violates his right to practice his religion, the Court will address that contention below.

To the extent Plaintiff's claims against the Supervisory Defendants are premised solely on their roles as grievance responders, his claims are not cognizable under 42 U.S.C. § 1983 and due to be dismissed.

**C. Remaining Claims**

Plaintiff asserts his claims against Defendants arise under RLUIPA and the First Amendment (interference with religious practice) and the Fourteenth

Amendment (deprivation of personal property and discrimination). Defendants invoke qualified immunity as to the RLUIPA claim. *See* Def. Mot. at 1, 15, 18.[2]

Prison officials sued in their individual capacities are "entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. *Id.* If a prison official makes a decision that is later found to be constitutionally deficient, the official is entitled to qualified immunity if the decision was based on a reasonable misapprehension of the law. *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate he was performing discretionary duties at the relevant times.

[2] Defendants do not address Plaintiff's assertions that they violated his rights under the First Amendment or the Fourteenth Amendment (for property deprivation and discrimination). *See generally* Def. Mot. For the sake of judicial economy, the Court invokes its authority under the PLRA to address those claims as well.

*Alcocer*, 906 F.3d at 951. Plaintiff does not dispute that Defendants were acting within the scope of their discretionary duties at the relevant times. *See* Pl. Resp. at 9–12. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate Defendants violated a constitutional right. This he has not done.

**i. RLUIPA and First Amendment Claims**

Defendants argue that, to the extent Plaintiff seeks monetary damages from them in their individual capacities, he does not assert a plausible RLUIPA claim. *See* Def. Mot. at 15. They are correct. The Eleventh Circuit has held that "section 3 of RLUIPA—a provision that derives from Congress' Spending Power—cannot be construed as creating a private action against individual defendants for monetary damages." *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), *overruled in part on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021), *and abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). Plaintiff sues all Defendants in their individual capacities. *See* Am. Compl. at 2–3. As such, his RLUIPA claims are due to be dismissed to the extent he seeks damages.

Assuming Plaintiff intended to name Defendants in their official capacities, his RLUIPA claims still fail. RLUIPA provides the following:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an

> institution . . . unless the government demonstrates that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "To establish a prima facie case under RLUIPA, the plaintiff must demonstrate that his engagement in religious exercise was substantially burdened by the law, regulation, or practice he challenges." *Smith v. Owens*, 848 F.3d 975, 979 (11th Cir. 2017). Generally, a prison rule that merely inconveniences an inmate does not substantially burden the inmate's sincerely held religious beliefs. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) ("[A] substantial burden is 'more than an inconvenience' and is 'akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly[.]'").

Accepting that Plaintiff has a sincerely held religious belief, he does not plausibly allege that the FAC policy prevented him from practicing his religion or coerced him to conform his behavior. At most, he alleges that he was inconvenienced because he did not know before he ordered the talisman that it could not be on a string. *See* Am. Compl. at 4–7. Although Plaintiff states in a conclusory manner that he was "prohibited from exercising his religious practice freely," *id.* at 8, his own allegations suggest the opposite because he contends that had he known of the jewelry-chain restriction, "he would have never ordered the talisman to begin with," *id.* at 5. Moreover, according to

grievances Plaintiff submitted, his primary complaint was that Defendant Tollick did not provide him with a confiscation slip, contrary to policy, and he wanted to be reimbursed for the cost of the talisman. *See, e.g.*, Def. Ex. 1 at 30, 33–34, 37, 45.

Finally, it bears repeating that Plaintiff was not prohibited from having an authorized talisman. Defendant Wynn approved Plaintiff's request, and the one he ordered was not compliant with the relevant provision of the FAC. Plaintiff was informed that his talisman had been confiscated as contraband and had over thirty days in which to return the talisman so he could order one that complied with the FAC, but he "took no further action." *See* Def. Ex. 1 at 39. Instead of returning the talisman in exchange for one that complied with prison rules, Plaintiff opted to file grievances challenging the rule or seeking an exception. Accordingly, Plaintiff fails to state a plausible RLUIPA claim against Defendants, and they are entitled to qualified immunity on this claim.

Defendants do not directly address Plaintiff's purported First Amendment claims. *See generally* Def. Mot. However, RLUIPA "provides greater religious protection than the First Amendment," *Dorman*, 36 F.4th at 1313, so if a plaintiff does not allege a violation under RLUIPA, he does not do so under the First Amendment. *See id.* ("Because . . . [the plaintiff's] free exercise claim fails under the more protective framework of the RLUIPA, we

need not separately discuss the First Amendment."). As such, because Plaintiff does not state a plausible RLUIPA claim, he does not state a plausible First Amendment claim.

**ii. Fourteenth Amendment Claim Against Defendant Tollick**

Plaintiff alleges Defendant Tollick "deprived him of the liberty to possess his religious talisman by confiscating it" without having provided him a "confiscation slip . . . per policy" and disposed of it prematurely, while his grievance appeal was pending, also in violation of policy. *See* Attach. at 4–6. First, as previously noted, a prison official's failure to follow policies or procedures, is not a constitutional violation. *See Knight*, 300 F.3d at 1276; *see also Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (noting that prison regulations do not confer rights or benefits on inmates but guide prison officials); *Wilson v. Bussey*, No. CV 113-054, 2014 WL 2040109, *5 (S.D. Ga. May 12, 2014) (citing *Sandin*, 515 U.S. at 481–82) ("[A]n allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted.").

Second, an intentional or negligent deprivation of personal property does not constitute a Fourteenth Amendment due process violation "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986). Plaintiff

has an adequate postdeprivation remedy available to him under state law. *See Case*, 555 F.3d at 1331 (recognizing Florida's civil cause of action for conversion provides an adequate postdeprivation remedy when law enforcement officers seize or retain personal property). As such, any claim for the deprivation of personal property is due to be dismissed.

**iii. Discrimination Claims**

Plaintiff also contends Defendants discriminated against him. *See* Attach. at 6. "To establish an equal protection claim, a prisoner must demonstrate that (1) "he is similarly situated with other prisoners who received" more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). A prisoner also must show the decisionmaker "acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Here, Plaintiff alleges the FDC "allows Catholic inmates to possess [religious items] connected by a string in a similar manner that a talisman is connected to a string." *See* Attach. at 6–7. Plaintiff's conclusory allegation is not supported by any well-pled facts that would permit the reasonable inference he was discriminated against. For instance, he does not identify a specific instance in which a prison official treated him—a Buddhist inmate—

less favorably than a similarly situated Catholic inmate vis-à-vis a request to carry a talisman or religious symbol by a string in contravention of the relevant FAC provision. *See generally id.*

Additionally, even if his allegations can be liberally construed to have met the first element of a discrimination claim, he does not allege facts permitting the reasonable inference that the decision regarding his talisman was made with a discriminatory purpose. *See Muhammad v. Sapp*, 388 F. App'x 892, 899 (11th Cir. 2010) (affirming summary judgment in favor of the defendants where the plaintiff did not "establish that the prison's decision to serve kosher meals [to Jewish inmates] but not halal meals [to Muslim inmates] was the product of intentional discrimination"). Plaintiff's vague, conclusory, and seemingly speculative contention that the FAC provision has been unfairly applied to him is insufficient to state a plausible claim under the Equal Protection clause.

Accordingly, it is now

**ORDERED**:

1. Defendants' Amended Motion to Dismiss (Doc. 28) is **GRANTED**, and this case is **DISMISSED with prejudice**.

2. Plaintiff's Motion for Sanctions (Doc. 32) is **DENIED**.

3. The **Clerk** shall enter judgment in favor of Defendants, terminate any pending motions as moot, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of September 2026.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Shaquon Rashawn Johnson
Counsel of Record